## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

ANTHONY LAMAR EVANS,

      Movant,

v.                          **Case No. 2:99-cr-00126-2**
                                   **Case No. 2:05-cv-00711**

UNITED STATES OF AMERICA,

      Respondent.

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is Movant's Motion to Vacate, Set Aside and Correct Sentence, filed pursuant to 28 U.S.C. § 2255, on August 18, 2005 (docket sheet document # 167), which is accompanied by a lengthy memorandum.

Movant, Anthony Lamar Evans (hereinafter referred to as "Defendant"), is serving a sentence of 188 months in prison, to be followed by a three year term of supervised release, upon his conviction by a jury of aiding and abetting the possession with intent to distribute cocaine base (Count Three), in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Judgment in a Criminal Case, # 137, entered October 23, 2003.) The District Court also imposed a special assessment of $100.00, and waived imposition of a fine. Id.

### Grounds for Relief

Defendant lists the following grounds for relief [quoted

*verbatim*]:

> A.  Ground one: Ineffective assistance of counsel, due to counsel's failure to conduct pretrial interviews and to call critical defense witnesses during trial.  Counsel failed to interview and call as defense witnesses Jamel Curtis and Arthur Blackmon, both of whom were present during the offenses alleged, and would have testified that Petitioner did not aid and abet anyone.
>
> B.  Ground two: Prosecutorial misconduct and ineffective assistance of counsel, due to counsel's failure to challenge the <u>Brady/Giglio</u> violations.  Prior to and during trial, the government failed to turn over evidence that was material to the determination of Petitioner's guilt and punishment.
>
> C.  Ground three: Violation of Petitioner's 5th and 6th Amendment rights, due to the increased sentence he received based on facts not included in the indictment or determined by the jury.  Petitioner's sentence was enhanced based on facts not included in the indictment or submitted to the jury.
>
> D.  Ground four: Violation of Petitioner's Due Process rights to a fair sentence, due to counsel's erroneous information which affected the integrity and fundamental fairness of this criminal proceeding.  Counsel erroneously informed Petitioner that he only had a few days in which to file a petition for a writ of certiorari, and erroneously informed Petitioner that he could not file a certiorari petition until the 4th Circuit Court of Appeals granted counsel's motion to withdraw.

(Motion, at 4-5.)

## Procedural History

On May 17, 1999, a confidential informant made a purchase of crack cocaine at a residence in Shamrock, Logan County, West Virginia.  Several hours later, law enforcement agents returned to the residence with a State search warrant, and seized three firearms, more than $8,000 in cash, 88 grams of crack cocaine, a

small quantity of marijuana, scales, and a smoking pipe.  Three adults (Defendant, Calvin Lee Wilder, Jr., Arthur Ray Blackmon, Sr.) and one juvenile were arrested.

On July 28, 1999, a federal grand jury returned a six count indictment, charging Defendant in Counts One, Two and Three (# 1).  Count One alleged that Wilder, Blackmon and Defendant conspired to distribute and to possess with intent to distribute cocaine base from March, 1999 to May 17, 1999.  Id.  Count Two charged that Defendant and another person aided and abetted Wilder in the distribution of crack cocaine on May 17, 1999.  Id.  Count Three alleged that on May 17, 1999, Wilder, Defendant, and another person, aided and abetted by each other, possessed with intent to distribute cocaine base.  Id.  Wilder and Blackmon were arrested within a few weeks of the return of the indictment and entered guilty pleas pursuant to plea agreements.

On March 21, 2003, Defendant was arrested in Ohio, and released on bond (## 68, 72).  Attorney Carl J. Roncaglione was appointed to represent him in the Southern District of West Virginia (# 70).  Defendant was an hour late for the start of his trial and the presiding district judge, the Hon. John T. Copenhaver, Jr., revoked his bond for the late appearance and for four positive urine screens (# 117).

On June 10-11, 2003, Defendant stood trial before a jury and was acquitted of Counts One and Two, and convicted of Count Three

3

(## 118, 126).

On October 23, 2003, Defendant's sentencing took place.  Mr.
Roncaglione submitted objections to the presentence report,
challenging the amount of cocaine base used to determine the base
offense level.  (Presentence Report, "PSR" at 17.)  Judge
Copenhaver ruled that he would disregard paragraphs 13 through 18
of the PSR, and overruled Defendant's objection to the effect that
only half of the 88 grams should be attributed to Defendant because
he and Wilder were 50/50 partners.  (Tr. Disp. Hrng., # 144, at
376.)  The court made findings as follows:

> THE COURT:                    * * *
>
> With that in mind, the Court finds by a
> preponderance of the evidence based upon the testimony of
> Mr. Wilder at the trial of Mr. Evans, that Mr. Wilder and
> Mr. Evans engaged in joint drug trafficking activity
> during the three months prior to May 17, 1999, at the
> time of their arrest in that Mr. Evans and Mr. Wilder
> transported from Columbus, Ohio, to Logan County, West
> Virginia, crack cocaine or cocaine base, as it were, on
> three occasions, on each of which occasion the amount of
> crack cocaine so transported by them was at least four
> ounces, and that that crack cocaine was transported by
> them to Logan County for the purpose of sale or
> distribution.
>
> The Court notes that as a result of the last of
> those three trips, the quantity of cocaine base that
> would have been brought by them to Logan County plainly
> exceeded four ounces because four and two-thirds ounces
> approximately of crack cocaine was either recovered in
> the form of the 88.2 grams of crack cocaine found at the
> time of their arrest or in the form of the some 8700
> dollars in cash that was recovered at that same time
> which is appropriately converted to crack cocaine at the
> conservative rate of 200 dollars a gram, and when so
> converted and added to the 88.2 grams of crack cocaine,
> it falls in the range of some 131 grams, which is the

4

reason the Court concludes that on that occasion, at least four and two-thirds ounces of crack cocaine, it could be inferred reasonably, would have been brought by them to Logan County on that trip.

* * *

Based on those calculations, the Court finds that the conclusion reached in the presentence report in Paragraph 19 is an accurate one, whereunder it is determined that Mr. Evans is responsible as relevant conduct for 340.2 grams of cocaine base, which falls within the 150-500 gram range for which the base offense level is 34. All the other calculations by the probation officer flowed from that result and, as a consequence, yield a total offense level of 36, with a criminal history category of I, for which the guideline sentencing range is 188 to 235 months imprisonment.

All of those findings are made by the Court by a preponderance of the evidence.

Id., at 378-79.

The Judgment in a Criminal Case was entered on October 23, 2003 (# 137), and Defendant promptly filed a notice of appeal (# 140). Two issues were raised: sufficiency of the evidence, and the giving of a supplementary instruction to the jury. Defendant's conviction was affirmed on appeal. United States v. Evans, No. 03-4860, 102 Fed. Appx. 836 (4th Cir. July 27, 2004). The Supreme Court issued its landmark decision in Blakely v. Washington, 542 U.S. 296 (2004) on June 24, 2004.

The Fourth Circuit docket sheet for appeal number 03-4860 reflects that on August 10, 2004, Mr. Roncaglione filed with the Clerk of the Fourth Circuit, a petition for rehearing (titled "Motion for Leave to File Supplemental Brief and Motion to

Reconsider"). The well-written, twelve page Motion explicitly relies on the <u>Blakely</u> decision and argues that Defendant's Sixth Amendment right to trial by jury was violated by his sentence being determined on facts which were never found by a jury or charged in an indictment. The undersigned has expanded the record to include the Motion (## 178, 179). The Motion was denied by order entered September 8, 2004. The mandate issued on September 16, 2004.

On September 23, 2004, Mr. Roncaglione sent a letter to Defendant which states as follows:

> The Fourth Circuit Court of Appeals has made a decision in your appeal case. I regret to inform you that the Court of Appeals has rejected your appeal and affirmed your conviction and the sentence imposed by the District Court. I have enclosed a copy of that decision. Also, pursuant to the Fourth Circuit's opinion, I am writing to advise you of your rights concerning the filing of a petition for writ of certiorari to the United States Supreme Court

> The only remaining means of direct review is to request the United States Supreme Court consider your case. The rules of the Supreme Court state that review is "not a matter of right, but of judicial discretion" and that review will only be granted, "when there are special and important reasons." The Supreme Court receives several thousand requests for review each year but only accepts less than one hundred for review. The kinds of federal court cases that the Supreme Court tends to accept are:

>> -cases where the Circuit Court of Appeals has issued a decision that conflicts with the decision of another Circuit Court of Appeals on the same important matter;

>> -cases where the Circuit Court of Appeals has decided an important question of federal law that has not yet been, but it should be, settled by the Supreme Court;

6

-cases where the Circuit Court of Appeals has decided a federal question in a way that conflicts with applicable decisions of the Supreme Court; and,

-cases where the Circuit Court of Appeals has so far departed from the accepted and usual courts of judicial proceedings as to call for the exercise of the Supreme Court's supervisory power.

Your case does not present any of these situations. Therefore, I feel it is highly unlikely that it would be accepted for review.

You have 90 days from the date of the Fourth Circuit decision to file a petition for writ of certiorari to the United States Supreme Court.  Your case was decided on July 27, 2004, therefore, your petition must be filed on or before **October 26, 2004**.

Since I filed your brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), and pursuant to <u>Austin v. United States</u>, 513 U.S. 5 (1994), I am filing a motion to withdraw as counsel to petition for a writ of certiorari in your appeal.  I do this because I have determined that there are no arguably meritorious issues that can be legitimately advanced in such a petition.  I have enclosed a copy of that motion with this letter.  Pursuant to Rule 46(d) of the Local Rules of the Fourth Circuit Court of Appeals you have (7) days in which to file a response with the Court of Appeals to my motion to withdraw.

If this motion to withdraw is granted, you will be permitted to file your own certiorari petition.  As soon as the Fourth Circuit makes a decision regarding this motion, you will be advised.

Sincerely,
/s/ Carl J. Roncaglione, Jr.

(Motion, Ex. 3.)  On September 28, 2004, Mr. Roncaglione filed a

motion to withdraw, which was granted by order entered November 10,

2004.

## **Blakely** and the Petition for a Writ of Certiorari

Defendant's Memorandum asserts that his counsel's errors with respect to the filing of a petition for a writ of certiorari prevented Defendant from receiving the benefits of Blakely on direct review. (Motion and Mem., at 26-29.) Defendant complains that his Fifth and Sixth Amendment rights were violated when he was sentenced in violation of Blakely, which was decided before his conviction became final. Id., at 18-26. The court will address these arguments (the third and fourth grounds for relief) in detail, as they have merit.

As noted above, Defendant's sentence was affirmed on July 27, 2004, one month after Blakely v. Washington was decided on June 24, 2004. Rule 13, Rules of the Supreme Court of the United States, provides that a petition for a writ of certiorari is timely when it is filed with the Clerk of the Supreme Court within 90 days after entry of the judgment. In Clay v. United States, 537 U.S. 522, 527 (2003), the Supreme Court noted that in the context of postconviction relief, a conviction becomes final when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." Accordingly, Defendant's conviction *was not final* when Blakely was decided.

In United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005), the Fourth Circuit held that United States v. Booker, 543 U.S. 220

8

(2005), "is not available for post-conviction relief for federal prisoners . . . whose convictions became final before *Booker* (or *Blakely*) was decided."  Defendant's conviction was not final when <u>Blakely</u> was decided; if Defendant or his appellate counsel had filed a petition for a writ of certiorari, his conviction would not have been final when <u>Booker</u> was decided.   Under these circumstances, the undersigned proposes that the presiding District Judge **FIND** that <u>Blakely</u> and <u>Booker</u> are available to Defendant for post-conviction relief.

At Defendant's sentencing, objection was made to the increase in offense level for relevant conduct, but no objection was made to the two-level enhancement for possession of a firearm.   No issue was raised on appeal with respect to either increase.   However, both relevant conduct and the firearm enhancement were raised in the Motion for Leave to File Supplemental Brief, etc. in light of <u>Blakely</u>, a context which was not presented before.   Presumably, Defendant must show "cause and actual prejudice" to excuse his failure to raise the issues before the District Court.   <u>United States v. Frady</u>, 456 U.S. 152, 167-68 (1982).   The existence of cause for a procedural default can be shown by a denial of effective assistance of counsel.   See <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).

### Cause: Ineffective Assistance of Counsel

The Supreme Court addressed the right to effective assistance

of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  In <u>Strickland</u>, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel.  <u>Id.</u> The first prong is competence; Defendant must show that the representation fell below an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  466 U.S. at 688-89.

> In order to meet the first prong, a defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

460 U.S. at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

Defendant contends that Mr. Roncaglione made a series of errors which resulted in Defendant's loss of his right to obtain the benefit of <u>Blakely</u> and <u>Booker</u>.  These are:

10

1.  Erroneous advice on the likelihood that his petition for a writ of certiorari would have been granted;

2.  Erroneous calculation of the date by which a petition for a writ of certiorari should have been filed; and

3.  Failure to advise Defendant that the motion to withdraw had been granted.  (Motion, Mem., at 28.)

The United States, in its Response (# 174, at 11), contends that Defendant could have performed research and learned that he had ninety days, and could have requested additional time in which to file his petition.

The Plan of the United States Court of Appeals for the Fourth Circuit In Implementation of The Criminal Justice Act ("CJA Plan") provides as follows:

<u>V.   ATTORNEY'S DUTY TO CONTINUE REPRESENTATION</u>

* * *

2.  <u>Appellate Counsel</u>: Every attorney, including retained counsel, who represents a defendant in this court shall continue to represent his client after termination of the appeal unless relieved of further responsibility by this court or the Supreme Court.  Where counsel has not been relieved:
If the judgment of this court is adverse to the defendant, counsel shall inform the defendant, in writing, of his right to petition the Supreme Court for a writ of certiorari.  If the defendant, in writing, so requests and in counsel's considered judgment there are grounds for seeking Supreme Court review, counsel shall prepare and file a timely petition for such a writ and transmit a copy to the defendant.  Thereafter, unless otherwise instructed by the Supreme Court or its clerk, or unless any applicable rule, order or plan of the Supreme Court shall otherwise provide, counsel shall take whatever further steps are necessary to protect the

rights of the defendant, until the petition is granted or
denied.

    If the appellant requests that a petition for writ
of certiorari be filed but counsel believes that such a
petition would be frivolous, counsel may file a motion to
withdraw with this court wherein counsel requests to be
relieved of the responsibility of filing a petition for
writ of certiorari.  The motion must reflect that a copy
was served on the client.

Similar language appears in the "Memorandum To Attorneys Appointed

Under The Criminal Justice Act," also published by the Fourth

Circuit.

The American Bar Association's publication which sets

standards for attorneys who defend persons charged with crimes

addresses the appellate duties of counsel as follows:

Standard 4-8.3 Counsel on Appeal

    (a) Appellate counsel should not seek to withdraw
from a case solely on the basis of his or her own
determination that the appeal lacks merit.

* * *

    (c) If the client chooses to proceed with an appeal
against the advice of counsel, counsel should present the
case, so long as such advocacy does not involve deception
of the court.   When counsel cannot continue without
misleading the court, counsel may request permission to
withdraw.

ABA Standards for Criminal Justice, Prosecution Function and

Defense Function 3rd ed., § 4-8.3, at 239 (1993).   In the

Commentary to the Standard, the following appears:

    Once counsel has accepted appointment or has been
retained to pursue a client's case on appeal, he or she
should continue representation of the client until all
direct appeal possibilities desired to be pursued by the
client are exhausted, new counsel is substituted, or a

12

court otherwise orders or permits counsel to withdraw. Id., at 242.

On June 24, 2004, the Supreme Court issued its decision in Blakely v. Washington, 542 U.S. 296 (2004), a case which sent a shock wave through Federal and State courts.  Beginning shortly after June 24, 2004, legal journals, newspapers, lawyers, and legal commentators engaged in widespread speculation as to whether the United States Sentencing Guidelines were rendered unconstitutional under the reasoning of Blakely.  In keeping with today's high-tech web-logs ("blogs"), a blog devoted almost exclusively to Blakely issues became widely known and continues today.  *See* http://sentencing.typepad.com.  The uncertainty over the continued validity of the Sentencing Guidelines was so great that the Supreme Court expedited review of United States v. Booker, in which the Court ultimately ruled that the Sentencing Guidelines cannot be applied as mandatory restrictions on judicial discretion.

Ms. Roncaglione's representation fell below an objective standard of reasonableness.

Mr. Roncaglione filed an excellent Motion for Leave to File Supplemental Brief, etc., and it is apparent that Mr. Roncaglione followed the Fourth Circuit's directive, found in the CJA Plan and the Fourth Circuit's Memorandum, and informed Defendant of his right to file a  petition for a writ of certiorari.  However, inexplicably his representation went no further to preserve and to

prolong Defendant's direct appeal so that he could have an opportunity to benefit from _Blakely_.

Counsel is not expected to predict the Supreme Court's rulings in a particular case.   However, widespread commentary strongly suggested that the Supreme Court would issue a landmark decision on _Blakely_'s application to the Sentencing Guidelines.   The only certain way to obtain review of Defendant's case in light of _Blakely_ was to continue his direct appeal.

It was definitely not reasonable to advise Defendant that it would be unlikely that his case would be accepted for review.   A simple search via computer would have revealed that hundreds of criminal defendants successfully filed petitions for writs of certiorari after _Blakely_.   Such cases have been remanded for consideration in light of _Blakely_ and _Booker_.

It is clear that Mr. Roncaglione erroneously calculated the date by which a petition for a writ of certiorari should have been filed.  The Fourth Circuit's denial of his Motion for Leave to File Supplemental Brief and Motion to Reconsider (which was treated as a petition for rehearing) was filed on September 8, 2004.   Rule 13.3. of the Supreme Court's rules provides:

> 13.3.   The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice).   But if a petition for rehearing is timely filed in the lower court by any party, . . . the time to file the petition for a writ of certiorari for all parties (whether or not they requested rehearing or

joined in the petition for rehearing) runs from the date
of the denial of rehearing . . . .

Thus the petition should have been filed by December 7, 2004, not
October 26, 2004.

The final paragraph of Mr. Roncaglione's September 23, 2004
letter to Defendant promises to advise Defendant when the Fourth
Circuit makes a decision regarding his motion to withdraw.
Defendant asserts, in his verified Motion and Memorandum, that he
never received notice that the motion to withdraw was granted.
(Motion, Mem., at 27.)   The United States does not dispute his
contention.  The undersigned consulted with the Deputy Clerk at the
Clerk's Office of the U.S. Court of Appeals for the Fourth Circuit
who handled the docketing of Defendant's appeal.  She confirmed
that the Clerk's Office would not have sent a copy of the order
granting the motion to withdraw to Defendant, and she stated that
this would have been the responsibility of defense counsel.

The undersigned has not located precedent that addresses the
issue of a criminal defendant not receiving notice that his
attorney's motion to withdraw had been granted.  However, in an
unpublished decision, United States v. King, No. 00-7773, 11 Fed.
Appx. 219 (4th Cir. May 23, 2001), the Fourth Circuit remanded a
case in which there was an uncontroverted assertion that a defense
attorney had not told his client of the disposition of his appeal
and of his right to petition the Supreme Court for a writ of
certiorari.

15

The undersigned is well aware of precedent which holds that a defendant does not have a right to counsel for application for review in the Supreme Court. Ross v. Moffitt, 417 U.S. 600 (1974). In Wainwright v. Torna, 455 U.S. 586 (1982), the Supreme Court held that a defendant was not deprived of effective assistance of counsel by his attorney's failure to timely file an application for certiorari, because he had no constitutional right to counsel to pursue discretionary review. In Austin v. United States, 513 U.S. 5, 8 (1994), the Supreme Court expressed its opinion that Circuit councils should review their CJA Plans to "allow for relieving a lawyer of the duty to file a petition for certiorari *if the petition would present only frivolous claims*." [Emphasis added.]

Reading these cases in light of the Fourth Circuit's CJA Plan, its Memorandum, and the ABA Standards suggests that an attorney, whether retained or appointed, is obliged to (1) notify his client of the possibility of Supreme Court review, and, if requested, (2) file a petition for a writ of certiorari as to nonfrivolous claims. If the client requests that a petition for a writ of certiorari be filed as to frivolous claims, then the attorney is obliged to file a motion to withdraw, with the expectation that the motion will be granted and the client will proceed *pro se*. Thus if there is a nonfrivolous claim to be raised in the Supreme Court, and a request by the client that a petition be filed, it is objectively unreasonable for an attorney to fail to do so. This conclusion is

16

buttressed by the unpublished <u>King</u> case, which states that "[i]f an indigent defendant wishes to petition for a writ of certiorari of a judgment affirming a criminal conviction, a court-appointed lawyer must represent him in filing the petition."

Based on the foregoing, the undersigned proposes that the presiding District Judge **FIND** that Mr. Roncaglione's performance fell below an objective standard of reasonableness when he failed to file a timely and nonfrivolous petition for a writ of certiorari on Defendant's behalf, asserting that he should be re-sentenced based on <u>Blakely</u>, erroneously calculated the deadline for filing such a petition, and failed to inform Defendant that the motion to withdraw had been granted.

## Prejudice

If a petition for a writ of certiorari had been filed, it is highly likely that Defendant's case, like thousands similar to it, would have been held pending the anticipated Supreme Court decision on the validity of the Sentencing Guidelines.  Most of those cases have been remanded for proceedings consistent with <u>United States v. Booker</u>.

In <u>United States v. Rodriquez</u>, 433 F.3d 411 (4th Cir. 2006), the Fourth Circuit addressed the two types of <u>Booker</u> errors.

> First, a sentencing court commits Sixth Amendment error if it enhances a sentence beyond the maximum authorized by facts found by a jury beyond a reasonable doubt or admitted by the defendant.  *See Booker*, 125 S. Ct. at 756; *United States v. White*, 405 F.3d 208, 215 (4th Cir.), [*cert. denied*, 126 S. Ct. 668] (2005).  Second, a

> court commits statutory error if it treats the Guidelines
> as mandatory, rather than as advisory ("statutory *Booker*
> error").  *See Booker*, 125 S. Ct. at 757; *White*, 405 F.3d
> at 215.

433 F.3d at 414.

The first inquiry is whether a Sixth Amendment error was committed.  The jury convicted Defendant of Count Three, aiding and abetting the possession with intent to distribute an unspecified quantity of cocaine base on May 17, 1999, exposing him to a term of imprisonment of not more than twenty years.  21 U.S.C. § 841(b)(1)(C).  The PSR and the trial transcript reflect that the police seized slightly more than 88 grams of cocaine base on May 17, 1999 (PSR, ¶ 11, at 7.)

At least 50 grams of cocaine base yields a Base Offense Level of 32, two levels below the Base Offense Level used by Judge Copenhaver, after consideration of relevant conduct.  When combined with the increase of two levels for possession of a firearm, Defendant was sentenced at a Total Offense Level of 36, four levels above the level found by the jury beyond a reasonable doubt.  Using Criminal History Category I, instead of facing 188 to 235 months at level 36, Defendant would face a guideline range of 121 to 151 months.  Thus, if Defendant's direct appeal had not concluded at the Fourth Circuit, and if a petition for a writ of certiorari had been filed, raising a <u>Blakely</u> claim, it is probable that a Sixth Amendment error would have been found, and Defendant's case would have been remanded for re-sentencing in light of <u>Booker</u>.

18

Defendant's current sentence of 188 months is 37 to 67 months higher than the range authorized by the jury verdict, in violation of <u>Booker</u>.  <u>United States v. Hughes</u>, 401 F.3d 540, 547 (4th Cir. 2005).  Moreover, in <u>United States v. Green</u>, 436 F.3d 449, 457 (4th Cir. 2006), the Fourth Circuit held that "a sentence imposed 'within the properly calculated Guidelines range . . . is presumptively reasonable.'"  If Defendant's "presumptively reasonable" sentence is 121 to 151 months, then it is clear that he has been prejudiced by his attorney's ineffective assistance of counsel on appeal.

It also appears that a statutory error was committed, because Judge Copenhaver treated the Sentencing Guidelines as mandatory. When imposing sentence, he stated:

> Mr. Evans, it's really regrettable that you're facing this enormous amount of prison time.  You were 18 years old when you came to Logan County and notmuch of a record.  Even now you're in the lowest criminal history category I, and yet you face this extended amount of time.  Even 188 months is 15 years or so.  And, of course, under the federal system, you have to serve better than five-sixths of it, unless you're eligible for some sort of break and I don't know how it would apply in your case.  I just don't see that there's any prospect of that, but there could be something.  If there is, I hope you find it.

> * * *

> I regret the necessity of sentencing you to such a lengthy term, particularly, as I've earlier mentioned, that now you're only 22 years old.  At the time you engaged in this activity, you were only 18.  But I hope somehow you can make the best of it . . . .

(Tr. Disp. Hrng., # 144, at 381, 383.)  These comments suggest that

Judge Copenhaver would have imposed a different sentence if the Guidelines had not been mandatory.

It is possible that post-<u>Booker</u>, Defendant could receive the same sentence as pre-<u>Booker</u>, but that is not the standard. Rather, to determine whether a defendant has been prejudiced as a result of his attorney's failure to provide effective assistance of counsel, the court must determine whether there is a "reasonable probability" that the result of the proceeding would have been different. That standard has certainly been met.

For the foregoing reasons, the undersigned proposes that the presiding district judge **FIND** that:

--Mr. Roncaglione's representation of Defendant fell below an objective standard of reasonableness in that he failed to preserve Defendant's right to pursue his direct appeal to the Supreme Court by filing a timely and nonfrivolous petition for a writ of certiorari.

--Mr. Roncaglione's erroneous calculation of the date on which a petition for a writ of certiorari should have been filed was not an exercise of reasonable professional judgment.

--Mr. Roncaglione's failure to advise Defendant that the motion to withdraw was granted was not reasonable.

--Defendant suffered prejudice in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different in that

Defendant's case would likely have been remanded for proceedings consistent with Booker, and the non-mandatory, presumptively reasonable guideline range would have been significantly lower. –Defendant has shown "cause and actual prejudice," thus excusing his procedural default.

### Ground one - Alleged ineffective assistance of counsel

Defendant contends that Mr. Roncaglione was ineffective because he failed to conduct pretrial interviews of Jamel Curtis (the juvenile) and Arthur Blackmon, and to call them to testify at trial. (Motion and Mem., at 10-13.) Defendant asserts that the evidence against him was "sparse," and that if either or both of the witnesses had testified, he would have been acquitted of all counts. Id., at 12.

The United States' Response argues that Defendant's assertion is "pure speculation and wishful thinking." (# 174, at 6.) The government also contends that Defendant's argument is simply an extension of his appellate argument that the evidence was insufficient to support his conviction. Id.

Defendant's Reply argues that Curtis and Blackmon would have testified that Defendant was not guilty of any drug law violations and had merely been present at the time of the search. (# 177, at 2.)

The court has set out above the standard of Strickland v. Washington. After review of the entire trial transcript, and

despite the proposed findings as to Mr. Roncaglione's performance with respect to the filing of a petition for a writ of certiorari, the undersigned was impressed by Mr. Roncaglione's tenacious and effective defense of Mr. Evans.  The jury's verdict (acquittal on two counts) is strong evidence of defense counsel's effectiveness.

Jamel Curtis, the juvenile, was not prosecuted by the United States in connection with these matters.  By the time Defendant went to trial in 2003, Curtis was an adult.  It is highly likely that Mr. Curtis would have asserted his Fifth Amendment privilege against self-incrimination if he had been subpoenaed to testify.

Arthur Ray Blackmon, Sr. was prosecuted, pled guilty to Count Six (maintaining a residence for the purpose of distributing cocaine base), served a sentence of twelve months and one day, and completed a three year term of supervised release (supervision ended on July 14, 2003, one month after Defendant's trial ended). At the conclusion of the trial, Mr. Roncaglione requested an instruction that the failure of the United States to call Mr. Blackmon as a witness should raise an inference that his testimony would not have been favorable to the government. (Tr. Trial, Vol. II, # 143, at 285-86.)  During the argument, Mr. Roncaglione asserted that he had made diligent, but unsuccessful efforts to find Mr. Blackmon.  Id., at 286.  Judge Copenhaver ruled that the witness was equally available to both sides, denied the instruction, and left it for argument.  Id., at 287.

Defendant's argument that Curtis and Blackmon would have testified "that Mr. Evans was not guilty of any drug law violations, and had merely been present at Mr. Blackmon's residence," is unsupported by any affidavit or declaration by either witness.  Both Blackmon and Curtis retained their privilege against self-incrimination, and it is unlikely that they would have taken the risk of testifying during Defendant's trial.  Moreover, the selection of witnesses is essentially a matter of trial strategy.  Mr. Roncaglione's performance in this regard was well within the range of reasonable professional assistance.

The undersigned proposes that Judge Copenhaver **FIND** that Defendant was not denied effective assistance of counsel with respect to counsel's failure to interview Curtis and Blackmon and to call them to the witness stand.

### Ground two - Alleged <u>Brady/Giglio</u> violations

Defendant argues that his rights were violated when the United States failed to disclose:

1.  Witness Minnis Chafin's handwritten statement of May 16 or 17, 1999;

2.  The agreement Chafin had with local authorities not to be prosecuted for past violations of state and federal drug laws;

3.  Handwritten notes of DEA forensic chemist Matthew Sider; and

4.  Documents relating to drug testing irregularities at the

23

West Virginia State Police Laboratory.  (Motion and Mem., at 13-17.)

The government demonstrated in its Response that it had in fact provided a copy of Minnis Chafin's handwritten statement to defense counsel.  (# 174, at 8.)  The United States does not directly address whether there was an agreement between Chafin and local authorities; rather the government points out that Chafin's testimony related to Count Two, as to which Defendant was acquitted.  Id.  The Response further asserts that it is unaware of any handwritten notes by chemist Sider.  Id.  As to the past irregularities related to drug testing, the government notes that the drugs in this case were re-tested by the DEA Laboratory.

Defendant's Reply concedes that his attorney received Mr. Chafin's handwritten statement.  (# 177, at 3.)  He persists in his argument that the government should have provided Chafin's agreement with local authorities, and repeats his assertion that Chafin's testimony was the sole basis for his conviction on Count Three.  Id., at 4-5.

During cross-examination of Chafin and Deputy Sheriffs Randall Sizemore and Sonya Porter, Mr. Roncaglione established that Chafin had served as a confidential informant for local law enforcement, had signed a cooperating individual ("CI") agreement statement, and while working as a CI had used drugs.  (Tr. Trial, Vol. I, # 142, at 91-98, 137-38, 161-62).)  It is apparent that Mr. Roncaglione

24

had a copy of Mr. Chafin's CI agreement, and he used it very effectively.

Finally, the United States presented evidence which supported the chain of custody and the accurate testing by the DEA Laboratory of the cocaine base which was seized from the Blackmon residence on May 17, 1999.  Defendant has made no showing that the substances seized were not cocaine base and there is no reasonable basis to question the lab results.

For the foregoing reasons, the undersigned proposes that the presiding district judge **FIND** that Defendant's second ground for relief is without merit.

It is respectfully **RECOMMENDED** that the District Court grant Movant's Motion filed pursuant to 28 U.S.C. § 2255, as to his third and fourth grounds for relief only, and re-sentence Defendant in conformity with <u>Blakely</u> and <u>Booker</u>.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have  ten days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings

25

and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, Anthony Lamar Evans, and to counsel of record.

  May 26, 2006  
        Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge

26